Citation Nr: 1504683 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 10-16 933 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an increased evaluation for residuals, status post pilonidal cystectomy with recurrent anal fistula, rated as 10 percent prior to February 25, 2008, 20 percent from February 25, 2008 to November 11, 2013, and 30 percent from November 11, 2013.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. M. Barnard, Senior Counsel


INTRODUCTION

The Veteran served on active duty from February 1977 to February 1980.

This appeal arose before the Board of Veterans' Appeals (Board) from a March 2009 rating decision of the Winston-Salem, North Carolina, Department of Veterans Affairs (VA) Regional Office (RO). In January 2012, the Veteran testified before the undersigned at a personal hearing; a transcript of this proceeding has been included in the claims folder. In October 2012, the case was remanded to the RO for additional evidentiary development. The instructions as to the claim for an increased evaluation have been substantially complied with; therefore, the Board may proceed to the adjudication of this claim. See Stegall v. West, 11 Vet. App. 268 (1998) ("[A] remand...by the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders.").

The issue of entitlement to TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to February 25, 2008, the Veteran's pilonidal cyst residuals were manifested by a small tender cyst, without drainage.

2. From February 25, 2008 to November 21, 2013, the Veteran's pilonidal cyst residuals were manifested by somewhat tender scars and recurrent anal fistulas but with no evidence of drainage or bleeding.

3. From November 21, 2013, the Veteran's pilonidal cyst residuals are manifested by hypertrophic, tender scars with some redness and swelling, recurrent anal fistula with some drainage, and a slight impairment of sphincter control with occasional involuntary bowel movements that required the wearing of a pad.


CONCLUSION OF LAW

The criteria for an increased evaluation for residuals, status post pilonidal cystectomy with recurrent anal fistula, rated as 10 percent prior to February 25, 2008, 20 percent from February 25, 2008 to November 11, 2013, and 30 percent from November 11, 2013 have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.159, 4.2, 4.3, 4.7, 4.20, Diagnostic Codes (DC) 7801, 7804, 7332, 7335 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VCAA

The VCAA describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a).

The notice requirements were met in this case by letter sent to the Veteran in May 2009 (which referred to an earlier notice letter not of record) and December 2012. This correspondence advised the Veteran of the information necessary to substantiate his claims and of his and VA's respective obligations for obtaining specified types of evidence. See Quartuccio v. Principi, 16 Vet. App. 183 (2002); 38 C.F.R. § 3.159(b). It also advised the Veteran of how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran has not alleged that VA failed to comply with the notice requirements of the VCAA, and he was afforded a meaningful opportunity to participate effectively in the processing of his claim, and has in fact provided additional arguments at every stage. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005).

The notice required by 38 U.S.C.A. § 5103(a) should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103 (2005). This was done in this case.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA treatment records are in the file. As such, the Board finds the duty to assist with obtaining medical records has been satisfied. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. The case of McLendon v. Nicholson, 20 Vet. App. 79 (2006), held that an examination is required when (1) there is evidence of a current disability, (2) evidence establishing an "in-service event, injury or disease," or a disease manifested in accordance with presumptive service connection regulations occurred which would support incurrence or aggravation, (3) an indication that the current disability may be related to the in-service event, and (4) insufficient evidence to decide the case.

The Board notes that the Veteran was afforded VA examinations in May 2008, November 2009, and November 2013. See 38 C.F.R. § 3.159(c)(4). These opinions were rendered by medical professionals following a thorough examination and interview of the appellant and review of the claims file. These examiners obtained an accurate history and listened to the appellant's assertions. The examiners laid a factual foundation and reasoned basis for the conclusions that were reached. Therefore, the Board finds that the examinations are adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. The undersigned explained the issue on appeal and sought testimony from the Veteran regarding the manifestations of his disability. The undersigned also solicited information on the availability of any additional relevant evidence for development. The Veteran has not suggested any deficiency in the conduct of the hearing. Therefore, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 5103A; 38 C.F.R. § 3.159.

Law and regulations

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1) (2014).

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2) (2014).

Increased evaluations

Disability evaluations are determined by comparing a veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1, Part 4. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

In determining the disability evaluation, VA has a duty to acknowledge and consider all regulations which are potentially applicable based upon the assertions and issues raised in the record and to explain the reasons used to support the conclusion. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). These regulations include, but are not limited to, 38 C.F.R. § 4.1, which requires that each disability be viewed in relation to its history and that there be an emphasis placed upon the limitation of activity imposed by the disabling condition, and 38 C.F.R. § 4.2, which requires that medical reports be interpreted in light of the whole recorded history, and that each disability must be considered from the point of view of the veteran working or seeking work. 

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007). Where, as here, entitlement to compensation has been established, but a higher initial disability rating is at issue, the extent of impairment throughout the entire period, beginning with the filing of the claim, must be considered and a determination must be made regarding whether "staged" ratings are warranted. See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999) (when a disability rating is initially assigned, separate ratings should be considered for separate periods of time, known as staged ratings).

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings. Nor will ratings assigned to organic diseases and injuries be assigned by analogy to conditions of functional origin. 38 C.F.R. § 4.20.

The Board notes that on and after November 21, 2013, the Veteran's disability has been assigned separate evaluations: 30 percent for the status post pilonidal cystectomy with recurrent anal fistula (DC 7332) and 20 percent for scars (DC 7804). Prior to this date, he was assigned a single rating under DC 7803 (a rating for scars). The Board will review all periods under consideration in order to determine whether the Veteran was entitled to increased evaluations under all potentially applicable DC's.

Under DC 7801, scars that are not on the face that are deep and nonlinear are assigned a 10 percent evaluation when they cover an area of at least 6 square inches but less than 12 square inches. A 20 percent evaluation requires scars covering at least 12 square inches but less than 72 square inches; a 30 percent evaluation requires coverage of at least 72 square inches but than 144 square inches; and a 40 percent evaluation requires coverage of 144 square inches or more.

Pursuant to DC 7804, a 10 percent is warranted for one to two scars that are unstable or painful; a 20 percent evaluation requires three or four scars that are unstable or painful; and a 30 percent evaluation requires five or more scars that are unstable or painful. Note 1 indicates that an unstable scar is one where, for any reason, there is frequent loss of skin covering over the scar.

Diagnostic code 7335 notes that anal fistulas are to be rated as impairment of sphincter control. Diagnostic code 7332, impairment of sphincter control, notes that a noncompensable evaluation is warranted when the fistulas are healed or slight without leakage. A 10 percent evaluation requires constant slight or occasional moderate leakage. A 30 percent evaluation requires occasional involuntary bowel movements, necessitating wearing of a pad. A 60 percent evaluation requires extensive leakage and fairly frequent involuntary bowel movements. A 100 percent evaluation requires complete loss of sphincter control.



Factual background and analysis

Prior to February 25, 2008

The applicable evidence notes that on September 24, 2007, the Veteran had called VA and stated that he had inflammation of a rectal fistula. He commented that he had had numerous surgeries in the past. He stated that he was experiencing minimal bleeding after a bowel movement. There was little improvement after a Sitz bath. He was seen at VA on September 28, 2007, with complaints of a fistula that had been draining over the past five days. The objective examination noted a small, tender cyst, but no drainage.

After a careful review of the evidence of record, the Board finds that an evaluation in excess of 10 percent is not warranted for this time period. There was no indication that his scarring from the prior surgeries covered an area of at least 12 square inches, but less than 72 square inches, nor is there any indication that he had three to four scars that were manifested by instability or pain. Thus, a higher rating is not justified under DCs 7801 or 7804. There is also no evidence to suggest that he had occasional involuntary bowel movements requiring the use of pad during this time frame. As a consequence, a higher rating under DC 7332 is not warranted.

February 25, 2008 to November 21, 2013

Between February 25 and March 27, 2008, the Veteran was seen with complaints of recurring fistula/abscess. On February 25, the examiner noted that it appeared that prior surgeries had already been performed that had one division through the sphincter; the examiner noted that this would not be done again since it could cause incontinence of stool. Rather, he would explore and clean out any recurring abscesses. On March 6, the examiner noted that the Veteran was now 10 days status post opening up of a cavity in the anal area. He was well-healed; in fact, he stated that it looked "pretty good." On March 27, the Veteran's anal abscess cavity was healed.

The Veteran was afforded a VA examination in May 2008. He indicated that he had had this condition since 1978 and that he had undergone several surgeries to deal with it. His current symptoms included itching and an inability to walk or sit for extended periods of time. He was not under current treatment and was taking no medications. The examiner noted that the pilonidal cystectomy scar was 6 by .2 centimeters in size. It was level and there was no tenderness. There was no disfigurement, ulceration, adherence, instability, inflammation, edema, tissue loss, keloid formation, hypopigmentation or abnormal texture. The rectal examination noted a fistula at 7 o'clock and which measured 1.5 by .1 centimeter. There was no evidence of bleeding. He was also noted to have hemorrhoids. The rectal examination was otherwise normal. The diagnosis was status post pilonidal cystectomy with scar, with recurrent anal fistula secondary to the cystectomy.

The Veteran was seen on an outpatient basis in June, July and October 2008 complaining of bleeding. He was noted to have a tough and tight scar. He was noted to use a lubricant; he also sat on an inflatable cushion.

VA re-examined the Veteran in November 2009. The Veteran indicated that he had had at least six surgeries to treat this condition. He experienced painful bowel movements. He had been told that he could undergo no further surgical intervention since this could cause fecal incontinence. He limited his walking, standing and riding in cars. The examiner noted the presence of a 9 by .3 centimeter scar that was somewhat tender. There was some central dimpling suggestive of a continuing problem with fistulaization. There was no inflammation or edema, nor was there any keloid formation. There was no disfigurement since the scar was on the inner gluteal fold. The scar caused no limitation of motion and there were no pigment changes. The rectal examination noted some hemorrhoids; the examination was otherwise normal.

On July 19, 2010, the Veteran was seen at VA with complaints of the onset of pain over the past four to five days in the area of the old pilonidal cyst. The examination revealed minimal redness and progressive pain. The old pilonidal scar had become tender at the bottom of the incision site. There was minimal suggestion of fluctuance. The area was drained. On August 16, 2010, it was noted that the incision site was healed and not a problem. The objective examination found no active disease. The diagnosis was of healed pilonidal disease. On November 2, 2010, he again complained that a cyst had been drained the week before. The examination showed the presence of a small epidermoid cyst, but no drainage.

After reviewing the evidence, the Board has concluded that a rating greater than 20 percent was not warranted during this time period. He did not have scars that covered at least 72 square inches but less than 144 square inches, nor did he have five or more scars that were unstable or painful. At most, he had some minimal tenderness; however, this resolved after treatment and does not suggest a level of pain that would justify the assignment of a 30 percent disability evaluation. Furthermore, there was no indication that his recurrent pilonidal disease had resulted in any involuntary bowel movements that required the wearing of a pad. Therefore, the assignment of an evaluation in excess of 20 percent cannot be justified.

From November 21, 2013

The Veteran was examined by VA in November 2013. The examiner noted that the entire claims folder had been reviewed. The Veteran was noted to have undergone multiple surgeries to drain recurring cysts. He had also been on oral antibiotics on several occasions between 1992 and 2013. Over the past 12 months he had taken Septra, an oral antibiotic. His scars were noted to cover 5 but less than 20 percent of the entire skin surface, but affected no exposed areas of skin. He was noted to experience recurrent infections in pilonidal cysts and had a history of anal fissures. The objective examination found a 12 by 2 centimeter scar midline of the sacrum down to the left side of the rectum. This scar was hypertrophic to varying degrees and was tender to palpation with some redness and swelling of the inferior margin. The Veteran stated that the scar was unstable; he reported that it would become irritated with pressure or friction, which would cause the scar to breakdown. On the area just anterior to the rectum there was a visible dimple which appeared to have fluid coming out, which was most consistent with an active fistula. The Veteran was noted to have anal/perianal fistulas and impairment of rectal sphincter control. He stated that he had a slight impairment of control on most days that required the wearing pf pads. He reported occasional involuntary bowel movements. He said that he continuously took stool softeners and pain medication.

After careful consideration of the evidence of record, the Board finds that a rating higher than 30 percent is not warranted for this time frame. There is no indication that the Veteran has scarring related to his pilonidal disease that covers more than 144 square inches of his body. There is also no indication that he suffers from extensive leakage due to poor sphincter control or from fairly frequent involuntary bowel movements. The Veteran had indicated that that leakage was slight and that he had occasional, not fairly frequent, involuntary bowel movements.

Therefore, the Board finds that increased evaluations are not justified for the periods of time on appeal. In reaching this decision, the Board has considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the appellant's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Extraschedular consideration

The Board has also considered the potential application of various other provisions, including 38 C.F.R. § 3.321(b)(1), for exceptional cases where schedular evaluations are found to be inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and is therefore found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary of Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected residuals, status post pilonidal cystectomy with recurrent anal fistula are inadequate. A comparison between the level of severity and symptomatology of the Veteran's disability with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. There is no evidence in the medical records of an exceptional or unusual clinical picture. The Board, therefore, has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b)(1) is not warranted.


ORDER

Entitlement to an increased evaluation for residuals, status post pilonidal cystectomy with recurrent anal fistula, rated as 10 percent prior to February 25, 2008, 20 percent from February 25, 2008 to November 11, 2013, and 30 percent from November 11, 2013 is denied.


REMAND

The Board notes that the issue of TDIU had been previously remanded in October 2012. The RO had been instructed to have the Veteran examined, which was done in November 2013. The examiner was requested to state whether the "residuals of the pilonidal cystectomy prevent the Veteran from securing and following substantially gainful employment for which his education and occupational experience would otherwise qualify him." The examiner commented that the Veteran's condition did affect his ability to work. He was unable to sit for prolonged periods and the frequent flares of his condition caused excessive absenteeism. His occasional loss of bowel control and the pads he had to wear caused unpleasant odors. His chronic pain and the sedation caused by his pain medications made it difficult to concentrate. While this evidence clearly demonstrates that his condition adversely affects his ability to work, it does not address the question as to whether this condition prevents the Veteran from securing and following substantially gainful employment for which his education and occupational experience would otherwise qualify him. Since this question was not adequately addressed, this issue must be remanded so that this opinion can be obtained. See Stegall, supra. 

Accordingly, the case is REMANDED for the following action:

1. Return the case to the examiner who conducted the November 2013 examination and request that an addendum opinion be provided that indicates whether or not the residuals of the pilonidal cystectomy prevent the Veteran from securing and following substantially gainful employment for which his education and occupational experience would otherwise qualify him. A complete rationale for the opinion must be provided. If such an opinion cannot be made without resort to mere speculation, this must also be fully explained. 

If the November 2013 VA examiner is no longer available, refer the case to another qualified professional and request that the above opinion be provided. 

Another VA examination should be conducted if it is deemed necessary to provide the requested opinion.

2. If another VA examination is deemed necessary, advise the Veteran of the importance of reporting and of the possible adverse consequences of failing, without good cause, to so report. See 38 C.F.R. § 3.655 (2014). A copy of any notification letter advising him of the time, date, and location of any scheduled examination must be included in the claims folder and must reflect that it was sent to his last known address of record. If he fails to report, the claims folder must indicate whether the notification letter was returned as undeliverable.

3. Readjudicate the claim for TDIU. If the decision remains adverse to the Veteran, he should be provided with a supplemental statement of the case, and an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2014).




______________________________________________
DENNIS F. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs